SCHIFF *v.* UNITED STATES (No. 538).[1]

PLATEAUX, FLAT ROUND ARTICLES MADE OF STRAW BRAIDS.
    The importation was of articles circular in form, slightly convex, but nearly flat in shape, with the appearance of plain round mats of braided straw, but without a crown and untrimmed: *Held,* since the evidence shows the material to be so constructed as to permit of being blocked into hats, without adding any new material, and that it is so blocked, being practically useless for any other purpose, it was dutiable under paragraph 409, tariff act of 1897, as hats composed of straw partly manufactured and untrimmed. It was so dutiable, though more than one piece of goods was sometimes employed in the making of one hat.

United States Court of Customs Appeals, May 22, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York,
G. A. 6481 (T. D. 27718).
    [Affirmed.]

*Comstock & Washburn (Albert H. Washburn* of counsel) for appellants.
*D. Frank Lloyd,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

On January 18, 1906, the appellants imported into this country a quantity of plateaux, which are flat, circular bodies composed of straw braids and used in the manufacture of straw hats. They are made in various sizes; the representative sample first put in evidence is 22 inches in diameter. However, some are larger and some smaller than that size.

The collector held the importation to be untrimmed straw hats, dutiable at 35 per cent ad valorem under the provisions of paragraph 409 of the act of 1897.

The appellants duly filed their protest to this ruling and advanced various alternative claims in contravention to the collector's classification. The one, however, which appellants chiefly rely upon is that the importation is dutiable at 30 per cent ad valorem under paragraph 449 of the same act as manufactures of straw not otherwise specially provided for.

This issue was duly heard upon evidence by the board and the decision of the collector was sustained. The appellants now pray for a reversal. The case comes to this court by transfer from the United States Circuit Court, Southern District of New York, where additional testimony was taken as appears by the record.

The two sections of the tariff law of 1897 which are referred to in the presentation and discussion of this issue, namely, 409 and 449, respectively read as follows:

409. Braids, plaits, laces, and willow sheets or squares, composed wholly of straw, chip, grass, palm leaf, willow, osier, or rattan, suitable for making or ornamenting hats, bonnets, or hoods, not bleached, dyed, colored or stained, fifteen per centum ad valorem; if bleached, dyed, colored or stained, twenty per centum ad valorem; hats, bonnets, and hoods, composed of straw, chip, grass, palm leaf, willow, osier, or rattan, whether wholly or partly manufactured, but not trimmed, thirty-five per centum ad valorem; if trimmed, fifty per centum ad valorem. But the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof.

449. Manufactures of bone, chip, grass, horn, india-rubber, palm leaf, straw, weeds, or whalebone, or of which these substances or either of them is the component material of chief value, not specially provided for in this act, thirty per centum ad valorem; but the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof.

The Government contends that the imported articles are properly described as "hats, composed of straw, partly manufactured, but not trimmed," and therefore dutiable under paragraph 409; whereas the appellants maintain that the articles can not be called hats at all, either wholly or partly manufactured; that they are only materials to enter into the making of hats; and that they should be classified as manufactures of straw not specially provided for, and dutiable as such under paragraph 449.

As has been stated, the plateaux as imported are circular in form, slightly convex but nearly flat in shape, and they have the appearance of plain round mats of braided straw. They have no crown nor other like resemblance in shape to a finished hat, and are of course untrimmed.

The plateaux are imported to be used in the manufacture of women's hats, and practically all such importations are used in that way. A very few are said to be made into flower holders or similar

articles, but such uses are so rare that they do not substantially qualify the foregoing statement.

The testimony is somewhat contradictory as to the manner in which the plateaux are used in the making of hats. It appears, however, that a single plateau may be made into a hat without the addition of any other straw or like material by a process of pressure and manipulation, and that many are thus made. It also appears that two plateaux may together be used in the making of a single hat. In such case one is blocked into a crown and the other is used for the brim, the center of the latter form being first cut out and the two pieces being then joined together. It appears also that a plateau may be folded or bent by hand by milliners and held in place by a form of wire in such manner as to be trimmed, and thus become a finished hat for woman's wear.

The fashions of course change, and the trade demands different kinds of hats at different seasons. Some of the witnesses therefore are doubtless more familiar with one of these processes and some with another. But the facts are substantially as briefly stated in the foregoing outline.

The language of the paragraph provides for hats composed of straw partly manufactured but not trimmed. These straw forms or bodies are intended to be made into finished hats; they are so constructed that they may generally be blocked into hats by a process which adds no new material to them and does not substantially change them except as to shape; and they are practically useless for any other purpose except to be finished as hats. A person familiar with such manufactures would therefore see in each plateau a hat which required for its completion only a process of blocking and trimming. The plateau would in that view be a hat in process of manufacture, one whose manufacture had been begun and had been carried far enough to identify it as the article which was to be finished from it. It would therefore be a partly manufactured hat. It would not have a crown, which is generally the most distinguishing feature of a finished hat, and therefore it would not look like a hat to a person unfamiliar with the business; but such provisions of the law relating to a manufacture are in a sense addressed chiefly to those who are engaged in it or are at least familiar with its processes. Such persons would have no difficulty in understanding the nomenclature which describes the plateau as a partly manufactured hat. This view is sustained by the history of the subject appearing in the decisions cited by counsel.

Nor is it altered by the fact that often two plateaux are used to make a single hat. From the testimony it is probable that this method was much less common before the adoption of the act than since, and the language of the act followed the process of manufacture which was then generally pursued

A single plateau may be blocked into a single hat; it may be bent and formed into one by a milliner's manipulation; such a use was and is common in the trade; and the plateau may therefore fairly be called a partly manufactured hat, even if the changing processes in the industry do at times favor the use of two such forms for the making of a single hat.

The decision of the board is therefore *affirmed.*

DE VRIES, Judge, having participated in the decision of the board, did not sit.