REDDEN & MARTIN *v.* UNITED STATES (No. 1427).[1]

UNFINISHED SCISSORS BLADES.

These articles have been brought into a condition where their only practical use or purpose is to be finished as scissors blades, and they are commercially unsuitable for any other purpose. They were properly assessed under the provision for "scissors and shears, and blades for the same, finished or unfinished," in paragraph 152, tariff act of 1909.

## United States Court of Customs Appeals, January 15, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7573 (T. D. 34546).
[Affirmed.]

*W. Evans Hampton* for appellants.

*Bert Hanson*, Assistant Attorney General (*Frank F. Wilson*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case was imported under the tariff act of 1909. The appraiser reported it to be "unpunched, unfinished scissors, sometimes called scissors forgings, intended to be ground down, punched, and manufactured into finished scissors." An advisory return of the merchandise for duty as "unfinished scissors" under paragraph 152 of the act was reported by the appraiser. In accordance therewith the collector assessed duty upon the importation as "unfinished scissors" at 15 cents per dozen and 15 per cent ad valorem when valued not over 50 cents per dozen, and 50 cents

[1] Reported in T. D. 35147 (28 Treas. Dec., 222).

per dozen and 15 per cent ad valorem when valued at more than 50 cents but not more than $1.75 per dozen, all under the terms of paragraph 152 of the act of 1909.

The importers protested against the assessment, denying that the merchandise was unfinished scissors, and claiming duty thereon at 30 per cent ad valorem as forgings under paragraph 123 of the act, or, alternatively, at 45 per cent ad valorem as manufactures of metal under paragraph 199 of the act.

The protest was submitted upon exhibits and other testimony to the Board of General Appraisers, and the same was overruled by the board. The importers now appeal from that decision.

The following is a copy of the competing provisions of the tariff act of 1909 thus called into question:

123. * * * Forgings of iron or steel, or of combined iron and steel, but not machined, tooled, or otherwise advanced in condition by any process or operation subsequent to the forging process, not specially provided for in this section, thirty per centum ad valorem; * * *

152. * * * Scissors and shears, and blades for the same, finished or unfinished, valued at not more than fifty cents per dozen, fifteen cents per dozen and fifteen per centum ad valorem; valued at more than fifty cents and not more than one dollar and seventy-five cents per dozen, fifty cents per dozen and fifteen per centum ad valorem; valued at more than one dollar and seventy-five cents per dozen, seventy-five cents per dozen and twenty-five per centum ad valorem.

199. Articles or wares not specially provided for in this section, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem.

The articles in question are made from tool steel by the process of stamping and forging, they being cleaned of the surplus metal left adhering to them after that operation. They are uniform in size and dimensions and bear in a crude way the form and appearance of unfinished scissors blades. They are not yet punched with the necessary pivot holes, nor are they true to one another, nor are they tempered, sharpened, nickel plated, colored, or polished. Nevertheless, they have been brought into a condition where their only practical commercial use or purpose is to be finished into perfect scissors blades, and this, of course, is the use for which they are designed. The complete finishing of the present articles into scissors blades requires many processes; these are said to number about 56 in all. In the course of this work the articles pass through the hands of many different workmen, adding greatly to the total cost of their manufacture. These processes, however, do not add any material to the metal frames as they now exist, nor do they take any material therefrom, for the sole purpose of altering their present scissorslike form. But by means of the additional processes just referred to the present articles are tempered, straightened, punched, nickel plated, colored, ground, polished, and fitted to one another.

It must be conceded that the crude articles now in controversy may aptly be classified either as "manufactures of metal" within the terms of paragraph 199 of the act, or as "forgings of iron and steel" within the terms of paragraph 123. The articles, therefore, would be dutiable under one of those paragraphs unless they would also come within the more specific description of "scissors * * * and blades for the same, finished or unfinished," contained in paragraph 152. In the latter event the more specific provision would of course prevail. The sole question in the case, therefore, is whether the imported articles in their present crude condition respond to the statutory designation of unfinished scissors blades. If the articles properly bear that title, then the present assessment should be affirmed.

At the trial before the board the importers submitted in evidence a number of scissors blades which are much further advanced in manufacture than the articles now in question, they having been straightened, drilled, tempered, and ground, but still requiring to be marked, scored, colored, nickel plated, edged, and otherwise treated before they are considered to be entirely finished articles. These articles were made part of the record as an illustrative exhibit in the case, and the importers undertook to prove that in the trade such articles only bear the designation of unfinished scissors blades. It need only be said, however, that the testimony contained in the record is plainly insufficient to establish any general, uniform, and definite trade usage of the term "unfinished scissors blades," and therefore that term must be given its common signification in the present case.

The decisive factor in the present case is found in the circumstance that the articles in question were brought to their present condition as part of the process of manufacturing them into finished scissors blades, and that this process has so far advanced in their case that the articles possess the elementary form and substance of scissors blades and are unsuitable commercially for any other use. The tariff act distinguishes in terms between scissors and scissors blades and expressly provides that both shall bear the indicated duty whether they be finished or unfinished as such. There must therefore come a point in the manufacturing process where in the contemplation of the act the articles become scissors or scissors blades in name and character, even though they may not yet be finished and ready for use as such. In the manufacture of the present articles that point has been reached. The numerous and important processes of manufacture through which they must yet pass are essentially finishing processes, such as do not forbid their present classification as unfinished scissors blades.

The following extract from the opinion of Judge Lacombe in the case of Oppenheimer *v*. United States (66 Fed., 52), relating to an

analogous provision for "articles of wearing apparel, manufactured in whole or in part," is in line with the foregoing conclusion:

The merchandise imported in this case is clearly within the italicized portion of this paragraph. It is made up "in part," the operation of making up having progressed so far that it is easy to identify the particular article of wearing apparel it is to be, and the materials out of which it is made being rendered, so far as the evidence shows, practically useless for any other purpose.

In the case of United States *v.* Lyon & Healy (4 Ct. Cust. Appls., 438; T. D. 33873), certain violin and cello necks manufactured from wood were in question, the competition being between the classification of "parts of musical instruments" and that of "manufactures of wood." Judge De Vries speaking for this court said:

The violin and cello necks are cut into shape, but are not polished or fitted, nor have they holes bored through them for the keys for the violin strings. They are, however, so far shaped as to indicate *per se*, as imported, their ultimate use, and that by reason of their shape and condition as imported they are unfit for any other use.

\*          \*          \*          \*          \*          \*          \*

Applying these principles to the record and samples before us, and as heretofore described, it would seem that as to the violin and cello necks they should be properly classifiable as parts of musical instruments. Their physical construction is such as to plainly render them unserviceable for any other purpose and to clearly identify them and their future use as parts of musical instruments.

In the case of Schiff *v.* United States (2 Ct. Cust. Appls., 89; T. D. 31634), certain straw plateaux, slightly convex but near flat in shape, with the appearance of plain round mats of braided straw, but without a crown and untrimmed, were held by this court to be dutiable under paragraph 409, tariff act of 1897, as hats composed of straw partly manufactured and untrimmed, rather than as manufactures of straw. The court said:

The language of the paragraph provides for hats composed of straw partly manufactured but not trimmed. These straw forms or bodies are intended to be made into finished hats; they are so constructed that they may generally be blocked into hats by a process which adds no new material to them and does not substantially change them except as to shape; and they are practically useless for any other purpose except to be finished as hats.

Under the tariff act of 1897 a question very similar to the present issue was raised in the case of Shear Co. *v.* United States, decided by the board on April 8, 1904, Abstract 1011 (T. D. 25199). The following is a copy of that decision:

The merchandise was classified as unfinished scissors blades under paragraph 153, tariff act of 1897, and was claimed to be dutiable as castings under paragraph 149.

FISCHER, *General Appraiser:* The case was submitted on the record and samples, which are scissors blades apparently just as cast. They are, however, perfectly formed, and seem to require nothing but smoothing and grinding to make them complete. The provision of paragraph 153 for "blades for scissors, \* \* \* unfinished," covers them, and is more specific than the provision in paragraph 149 for "castings \* \* \* not specially provided for." The protest is overruled and the decision of the collector affirmed.

The reasoning upon which the foregoing decision rests commends itself as sound, and in view of the fact that the relevant provisions of the tariff act of 1909 are substantially identical with those of the act of 1897 the decision may also be regarded as having in a measure received legislative approval and adoption.

The views above expressed are not in conflict with the decision of this court in the case of Fenton *v*. United States (1 Ct. Cust. Appls., 529; T. D. 31546), which is especially cited by appellants. The articles involved in that case were so-called cork floats and the competition was between a provision for "fishing tackle" and one for "manufactures of cork." There was, however, no provision in the act for "unfinished" or "partly manufactured" fishing tackle. It appeared from the testimony that the articles in question were not yet finished as floats but required numerous processes of manufacture before they could be used as such. The court held that because of their unfinished condition the floats could not be classified as fishing tackle. In that behalf Judge Barber, speaking for the court, said:

> But we do not think in its common, ordinary meaning the term "fishing tackle" includes a rod, reel, hook, or float that is not in finished condition ready for the angler's use, and the terms "parts thereof" must refer to the completed article, whatever it may be, that is also ready for use either alone or in connection with other articles of the angler's outfit.

This reasoning would not govern the present case, because the applicable provision for scissors blades expressly covers unfinished blades as well as finished ones.

In accordance with the views above expressed the decision of the board is *affirmed*.