# CASES ADJUDGED IN UNITED STATES COURT OF CUSTOMS APPEALS.

## CARR v. UNITED STATES (No. 2067).[1]

1. "FINISHED PARTS"—PARAGRAPH 119, TARIFF ACT OF 1913—MATERIALS AND FINISHED MANUFACTURES DISTINGUISHED.

A finished part is such a part as will perform its proper function when in place. The lubrication of the working surfaces of a machine or any part of it can not be regarded as a manufacturing process. Nor can the correction of defects or irregularities. Nor can painting, where the painting is designed wholly to preserve from rust and to impart an attractive appearance.

2. AUTOMOBILE SPRINGS.

Automobile springs, such of them as are improperly drilled or bushed needing to have these defects corrected, ready to be put on automobiles after being painted and lubricated, are "finished parts of automobiles" under paragraph 119, tariff act of 1913, and not "articles of metal" under paragraph 167.

United States Court of Customs Appeals, February 17, 1921.

APPEAL from Board of United States General Appraisers, G. A. 8364 (T. D. 38474)

[Affirmed.]

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellant.
*Bert Hanson*, Assistant Attorney General (*Harry M. Farrell*, special attorney, of counsel), for the United States.

[Oral argument Jan. 19, 1921, by Mr. Tompkins and Mr. Hanson.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Articles invoiced as "auto springs," "steel springs," "rear springs," "front springs," and "front auto springs," were classified by the collector of customs at Detroit as finished parts of automobiles and assessed for duty at 30 per cent ad valorem under that part of paragraph 119 of the act of 1913, which reads as follows:

119. * * * automobile chassis, and *finished parts of automobiles*, not including tires, 30 per centum ad valorem.

The importer protested that the springs were not finished parts of automobiles, and set up as the ground of objection upon which he relied the claim that the springs were articles of metal, and dutiable at 20 per cent ad valorem under the provisions of paragraph 167 of said act.

[1] T. D. 38633.
83144—23—VOL 11——1

The Board of General Appraisers overruled the protest and the importer appealed.

The evidence in the case establishes without contradiction that the springs are automobile springs and that they are used exclusively in the manufacture of automobiles.

The springs are inspected after importation, and if the holes in the ends are too large or the bushings are defective, the bushings are removed and replaced by others which are reamed to size. On the other hand, if the holes are of the proper size and the bushings are of the right quality and skillfully inserted, the bushings are neither removed nor reamed. The springs are lubricated by applying oil or graphite grease to the surface of the leaves exposed to friction. If the springs are to be used by the importer in the immediate building of machines, they are cleaned with gasoline and given a priming or first coat of paint. When the priming coat is dry, they are again cleaned with gasoline and given a second or final coat which is dried by exposing them to heat in an oven. If it be not the purpose of the importer to use them in the immediate building of machines, but to sell them to other manufacturers, or to keep them in stock as replace parts, they are simply lubricated and primed.

The removal and the reaming of the bushings are evidently designed to either fit the springs in place or to correct defects, and therefore can not be regarded as finishing processes in the production of completed springs. Indeed, it stands proven that when the holes are of proper size and the bushings are of proper quality and skillfully inserted, the bushings are not removed or reamed.

The lubrication of the springs serves no purpose other than that of diminishing friction and consequently reducing the wear on the leaves. That treatment of the working surfaces of a machine, or any part of it, is not a manufacturing process and is therefore not an agency which, if omitted, would leave the machine or any of its parts unfinished.

It is entirely probable that there are articles which unpainted would be classified as unfinished, but unpainted automobile springs can not in our opinion be so regarded, inasmuch as the painting of them is designed solely to preserve them from rust and to give them an attractive appearance when in place. Painting is not one of the manufacturing operations required for the production of automobile springs. If painted at all, they are painted after they have been subjected to every manufacturing process necessary for their completion and to fit them for use as springs. In fact, it affirmatively appears from the record that they may be and are finally painted after they have become an actual part of the chassis or running gear of automobiles.

In the common ordinary acceptation of the term a finished part is such a part as will perform its proper function when in place, and as the articles here in question will in their condition as imported perform the function of automobile springs when installed, they are in the absence of any evidence establishing that the statutory designation has a different meaning in the trade, finished parts of automobiles.— Ball et al. *v.* United States (8 Ct. Cust. Appls., 143; T. D. 37271).

We have carefully examined all the cases cited by appellant and find them not at variance but quite in accord with the conclusions here reached.

The decision of the Board of General Appraisers is *affirmed.*