UNITED STATES *v.* BERNARD, JUDAE & CO. (No. 3271)[1]

---

[1] T. D. 44029.

United States Court of Customs and Patent Appeals, April 29, 1930

*Charles D. Lawrence*, Assistant Attorney General (*Peter A. Abeles* and *James R. Ryan*, special attorneys, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument April 14, 1930, by Mr. Ryan and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal by the United States from the judgment of the United States Customs Court holding certain merchandise dutiable as claimed by the importer, and overruling the classification and assessment made by the United States collector of customs under the Tariff Act of 1922.

The merchandise involved appears to be commonly known as straw plateaux. It is so referred to by the collector in his report, and by the witnesses and attorneys in the court below. It consists of circular forms, almost flat, measuring 22 inches in diameter and composed of straw, not bleached, dyed, colored, or stained.

The collector in his report stated:

The merchandise is straw plateaux, assessed for duty at 35 per centum ad valorem under paragraph 1406, tariff act of 1922, as partly manufactured straw hats, not blocked or trimmed.

The importer, appellee herein, in its protest claimed the merchandise to be dutiable at 15 per centum or 20 per centum under the first part of paragraph 1406.

The court below held the merchandise dutiable as claimed at 15 per centum ad valorem under the provision in said paragraph 1406 for "braids, plaits, laces, and willow sheets or squares, composed wholly or in chief value of straw * * * suitable for making or ornamenting hats, bonnets, or hoods, not bleached, dyed, colored, or stained * * *."

Said paragraph 1406 reads as follows, the pertinent portions involved being italicized:

PAR. 1406. *Braids, plaits, laces, and willow sheets or squares, composed wholly or in chief value of straw*, chip, grass, palm leaf, willow, osier, rattan, real horsehair, cuba bark, or manila hemp, *suitable for making or ornamenting hats, bonnets, or hoods, not bleached, dyed, colored, or stained, 15 per centum ad valorem;* bleached, dyed, colored, or stained, 20 per centum ad valorem; *hats, bonnets, and hoods composed wholly or in chief value of any of the foregoing materials, whether wholly or partly manufactured, but not blocked or trimmed, 35 per centum ad valorem;* blocked or trimmed, 50 per centum ad valorem; straw hats known as harvest hats, valued at less than $3 per dozen, 25 per centum ad valorem;

all other hats, composed wholly or in chief value of any of the foregoing materials, whether wholly or partly manufactured, not blocked or blocked, not trimmed or trimmed, if sewed, 60 per centum ad valorem. But the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof.

The case was first submitted to the lower court upon testimony introduced by appellee, the Government offering no evidence, and the court rendered a decision in favor of appellee. A motion for rehearing was granted, and the Government then introduced the testimony of four witnesses. The final decision of the court affirmed its prior decision in the case.

The lower court held that the merchandise in question is not suitable to be blocked into hats, and the first question to be determined is whether such finding is clearly against the weight of the evidence.

J. C. Beckman, Max A. Whitman, and Floyd Pfautch, witnesses for appellee, testified that the merchandise in question could not be blocked into hats, and gave reasons why it could not, in their opinion, be so blocked.

Henry T. Whitton, Winfield J. MacKallor, and George Miller, witnesses for the Government, testified that the merchandise could be blocked into hats, and that they had seen it done. John J. Moran, a witness for the Government, testified as follows upon direct examination:

Q. Did your concern manufacture anything from merchandise like illustrative Exhibit C?—A. Yes, sir.

Q. You say you have manufactured?—A. Very few.

Q. That is just the point, how extensively?—A. Not very extensively, because it was not practical from a *fine* hat standpoint. [Italics not quoted.]

Upon cross-examination the witness explained the foregoing answer as follows:

You see, on the block hat we had to use one plateau for a crown and there was considerable waste from that crown. We also had to use one plateau for a brim and had to cut out the center of the crown and had to cut off the edge. We had to use the edge, iron it out and use it up as an extension on felt hats or other body materials.

Judging the matter from the testimony of the witnesses alone, we would be inclined to hold that the finding of the lower court that the merchandise was not suitable to be blocked into hats was not contrary to the evidence, but in coming to the conclusion that it did we think the court must have overlooked the sample of the merchandise introduced in evidence by the appellee.

We have that sample before us, and from its inspection we think it sustains the testimony of the witnesses for the Government that the merchandise is suitable to be blocked into hats.

The oral testimony is to the effect that the plateaux, as imported, are flat; but the sample discloses that in fact they are somewhat convex in form, and evidently designed by the manufacturers to be blocked into hats. Appellant in its brief contends that the sample before us has become warped and creased from packing during its five and a half years as an exhibit, and urges that the testimony of the importer stands uncontradicted that the merchandise when imported was absolutely flat. While it is true that the sample has to a large degree evidently lost its original shape, it is also a fact that it discloses that it is so constructed that it never could lie absolutely flat, but was in its manufacture so made as to give it a convex form, at least two inches higher in the center than at its outer edge.

In the case of *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, T. D. 43090, this court, speaking through Judge Bland, said:

In classification cases like the one at bar the sample is ofttimes a very potent witness.

This observation is applicable to the case at bar, and properly weighed and considered leads to the conclusion that the lower court was in error in holding that the merchandise herein involved was not suitable to be blocked into hats.

The lower court in its opinion, referring to the testimony of the Government's witnesses, said:

Part of the testimony of these witnesses tended to show that the merchandise in question *could be used* for making or blocking entire hats, but that in fact the *general* use to which the merchandise was put was as *material* for making hats. One of the Government witnesses testified that his firm had manufactured *a very few hats* from merchandise like that in this case, but "not very extensively, because it was not practical from a fine-hat standpoint," * * *.

This finding of the lower court from the testimony of the Government's witnesses was clearly not warranted.

Henry T. Whitton, a witness for the Government, testified as follows:

Q. Have you ever seen this commodity, this article illustrative Exhibit C, used for any purpose?—A. Part for making hats. They have made hats of it, I know that.

Q. Have you yourself ever manufactured from them?—A. Yes, sir.

Q. Just what did you do?—A. Sometimes we would make them, block them into an entire hat; other times we would use it as part of a hat.

Q. Now in blocking them will you please state just what you mean by that?—A. We would size the exhibit first, and as soon as the sizing was right we would put it over a block and use the steam on it and block it into any shape we desired.

Q. Your concern has done that, themselves?—A. Yes, sir.

On cross-examination, the witness, referring to the merchandise in question, testified:

Q. How are they generally used by hat manufacturers in this country; how were they generally used?—A. In later years they have been used principally to block hats out of; block them into hats.

Q. Do you mean that would be employed to make the hat out of, without cutting out the center more generally than—— A. Yes, sir, in later years, they would make the entire hat out of that.

Q. By later years you mean from what time to what time?—A. In the last seven years.

Q. But prior to that, the general use to which they were put was to use them as material for making hats, isn't that true?—A. Yes, sir.

The above testimony was given on November 13, 1928, so that the period during which the witness testified that the plateaux in question were principally used to make hats without cutting was from 1921 to 1928, a period beginning prior to the enactment of the tariff act of 1922 and covering the date of the importation of the merchandise in question.

The Government's witness MacKallor testified as follows:

Q. Will you please tell the court just what you have seen done with them?—A. I have seen the plateau taken by the manufacturer and made into a complete hat.

Q. And by that you mean a blocked hat?—A. A blocked hat.

Q. Then did you ever see it cut up so that it was only used for a crown?—A. No.

Q. Did you ever see this cut up so that you could use these for a brim?—A. I have seen them cut up. I haven't seen them used.

Q. So you have seen them both made into blocked hats and also cut up to make other kinds of hats?—A. Correct.

On cross-examination the witness testified as follows:

Q. Where was it that you saw the article like illustrative Exhibit C used as material for hoods?—A. For a complete hat?

Q. Yes, sir.—A. Bond street, in the factory of Hirsch & Ginsberg.

Q. When was that?—A. About 1916, or 1917, possibly.

Q. Did you observe at that time the particular size of the plateaux that were being used?—A. Different sizes were being used.

Q. Were they all perfectly flat, yes or no?—A. Not perfectly flat as this desk, as flat as they could be made.

George F. Miller, a witness for the Government, testified as follows:

Q. Have you ever seen a plateau made into a complete blocked hat?—A. You mean processed, or have I seen the finished hat made out of the plateau?

Q. Yes.—A. Yes, I have.

Q. Where did you see them?—A. I have seen them in shipments and in the factories that made them.

On cross-examination this witness testified:

Q. Have you also seen hats manufactured in which plateaux like illustrative Exhibit C were used as material?—A. I have.

The last Government witness, John J. Moran, testified as indicated in the lower court's opinion, but it should be observed that he testified only that the plateaux in question could not be economically and profitably manufactured into *fine* hats. This qualification, we think, prevents it being considered as evidence that the plateaux in question could not be profitably blocked into *ordinary* hats, and is no evidence that they were not so used.

Of course a finding as to general use should not rest upon the testimony of the Government's witnesses alone, but all of the testimony in the case must be considered.

The importer's witness, Beckman, testified as follows:

Q. Can you explain how this sample differs if at all from the condition of the plateau as imported?—A. The plait as it is imported is a circular affair, woven flat—a flat circle. This it is necessary to cut up as you feel the need of it to make the hat; sometimes all that is necessary is to cut the middle of it out so you can get it on a head.

The importer introduced in evidence two samples of finished hats as representative of how the merchandise in issue was used. As to one of such samples the witness, Beckman, testified on cross-examination as follows:

Q. Examine the top of that and the straw part of that, was that blocked?—A. That was dampened and shaped.
Q. On a block, was it not?—A. It was, just the top part, yes.
Q. But it was done with a block?—A. It was done over a block.
Q. Before importation?—A. No, after.

Max A. Whitman, a witness for the importer, testified as follows:

Q. Please state just how a plateau or plait like Exhibit C are used in the hat industry, if at all?—A. They are used for cutting apart and manufacturing and cutting into a hat. They would have to be sewed together after being cut apart.
Q. What parts or part of this Exhibit C would have to be cut in order to manufacture it into a hat?—A. The center part would have to be cut out for the top of the crown; the side crown would have to be cut from the remainder, and the brim from what still remains; and shaped together and sewed together to suit requirements.
Q. And have you personally observed such manufacturing processes as you have described?—A. Yes, sir.
Q. A single time or repeatedly?—A. Numberless times.

We think the clear weight of the testimony is that the general use to which the merchandise was put was not, as held by the lower court, "as *material* for making hats," but as partly manufactured hats, and it was properly classified by the collector. *Schiff* v. *United States*, 2 Ct. Cust. Appls. 89, T. D. 31634.

The record in this case is very unsatisfactory. Evidence might have been introduced explaining the construction of the plateaux in issue, and the reason for their convex shape. If they were not designed for blocking into hats, evidence could have been introduced

of why there was a market for merchandise of that particular description, and why purchasers prefer this particular form rather than plain braided or plaited material, without regard to form. At least the oral testimony as to the description of the merchandise should have conformed to the illustrative exhibit introduced in evidence.

Because of the state of the record, this opinion should not be considered as an authority for the classification of similar merchandise. We decide this case solely upon the evidence in this record. With a different record before us, we might come to a different conclusion.

One further observation may be proper. Appellee contends that the merchandise in issue was commercially known as plaits. Commercial designation is not established by the testimony. There was no testimony that the merchandise in issue was uniformly, definitely, and generally known in the trade and commerce of the country as plaits.

The protest should have been overruled. The judgment of the Customs Court is *reversed*.