THE HARDING CO. ET AL. *v.* UNITED STATES (No. 3909) [1]

United States Court of Customs and Patent Appeals, January 6, 1936

*Beardsley & Bradley* (*Ten Eyck R. Beardsley* of counsel) for appellants.
*Joseph R. Jackson,* Assistant Attorney General (*John J. McDermott,* special attorney, of counsel), for the United States.

[Oral argument October 4, 1935, by Mr. Beardsley and Mr. Jackson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

A certain manufacture made from asbestos yarn, wire, and a mixture of other materials was, by the collector at the port of New York, classified under paragraph 1501 (a), Tariff Act of 1930, as a manu-

[1] T. D. 48109

facture of asbestos yarn and assessed with duty at 40 per centum ad valorem.

The importers protested said classification and assessment of duty and claimed the merchandise to be dutiable at 25 per centum ad valorem under paragraph 369 of said act as parts of automobiles. In the protests other claims were made which are not pressed here.

The pertinent portions of the tariff act which we need to consider here follow:

PAR. 1501 (a) Yarn, slivers, rovings, wick, rope, cord, cloth, tape, and tubing, of asbestos, or of asbestos and any other spinnable fiber, with or without wire, *and all manufactures of any of the foregoing, 40 per centum ad valorem.* (Italics ours.)

PAR. 369 (a) Automobile trucks valued at $1,000 or more each, automobile truck and motor bus chassis valued at $750 or more each, automobile truck bodies valued at $250 or more each, motor busses designed for the carriage of more than ten persons, and bodies for such busses, all the foregoing, whether finished or unfinished, 25 per centum ad valorem.

(b) All other automobiles, automobile chassis, and automobile bodies, and motor cycles, all the foregoing, whether finished or unfinished, 10 per centum ad valorem.

(c) *Parts* (except tires and except parts wholly or in chief value of glass) for any of the articles enumerated in subparagraph (a) or (b), finished or unfinished, not specially provided for, 25 per centum ad valorem. (Italics ours.)

The merchandise in this case is identical with that which this court had under consideration in the case of *United States* v. *The Harding Co.*, 21 C. C. P. A. (Customs) 307, T. D. 46830. In that case this court held as follows (quoting from the syllabus):

The merchandise, although used, when cut into proper lengths and the necessary holes drilled therein "to fit the holes on the shoes for brakes," as brake linings for automobiles, is a mere material "commercially capable" of various uses, among which is that of making brake linings for automobiles. Furthermore, the merchandise is not marked to indicate where it is to be cut, for the reason that, even when used as brake linings for automobiles, it must be used in various lengths; accordingly, the identity of the individual articles is not fixed with certainty. *Rogers* v. *United States*, 14 Ct. Cust. Appls. 51, T. D. 41552. And even if the merchandise could be said to be dedicated exclusively to the making of brake linings for automobiles, it would be, nevertheless, a mere material for such use.

The record in that case discloses that the brake material then at bar might have had various uses. Appellants in this case have made a new record, which includes the record in the former *Harding* case, and have established, according to the finding of the trial court, that the imported merchandise has but one use, namely, in the manufacture of brake lining for automobiles, and that it is not commercially suitable for other uses. It is shown by the record that the merchandise is imported in lengths of about 100 feet, of different widths

and thicknesses, and must be cut to fit the individual brake shoe desired; that one end of the long roll is first pressed on the brake shoe and fastened at that end, then the material is used for leverage in making it fit tightly on the brake shoe; and that after it is fitted and riveted to the brake shoe it is then cut off at one end. Appellants argue that the new record is made to meet certain statements found in the former opinion and that the proof as a whole justifies a finding by this court that the imported merchandise consists of parts of automobiles.

As long as the merchandise is not cut before importation or is not marked when imported so that nothing remains to be done to make it an automobile brake lining except to cut it into pieces of predetermined length, we regard it as wholly immaterial that the cutting of the roll is delayed until it is fixed to and riveted upon the brake shoe. In the condition as imported, the long roll of brake-lining material has in no manner been dedicated to the making of any particular brake lining. To be a part of an automobile, that is a brake lining, it must be more than mere material for making a brake lining.

In *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, the importation consisted of paper-makers' felt. It was imported in the form of endless belts for use on a Fourdrinier paper-making machine. It was held to be parts of machines. In that instance, however, the goods were ordered by the importer according to the desired dimensions and were used on the machine without alteration, and were attached to the machine merely by putting them around the rolls.

In *United States* v. *John Wanamaker*, 16 Ct. Cust. Appls. 548, T. D. 43266, cotton canvas stamped with designs in various colors, and silk yarn and wool yarn, in corresponding colors, intended to be embroidered over the designs, were held to be dutiable, respectively, as manufactures of cotton, silk yarn, and yarn in chief value of wool rather than manufactures in chief value of wool and manufactures of silk; and that they were not "parts" capable of being attached or put together by mere assembly.

In *Snow's United States Sample Express Co.* v. *United States*, 8 Ct. Cust. Appls. 17, T. D. 37161, it was held that cotton fabrics of various widths, imported in lengths of about 30 yards, adapted, by being cut between printed designs, to be used as bedspreads, curtains, portieres, table spreads, and couch covers, were cotton cloth, printed, rather than articles made from cotton cloth. It was there said that the merchandise was not "so far advanced that it had an individuality which identified it in its unfinished state as the thing it would be when finished".

In *Rogers* v. *United States*, 14 Ct. Cust. Appls. 51, T. D. 41552, which we cited in the former *Harding* case, woven figured woolen

cloth, imported in running lengths ranging from 30 to 50 meters, not marked to indicate where it was to be cut, but adapted, when cut between the designs, to be used for upholstering the backs and seats of chairs, sofas and davenports, was a mere material to be used for covering the backs and seats of furniture, and was not chair backs or seats.

Running through most of the decisions pertinent to the inquiry here, it is made clear that before imported merchandise shall be regarded as parts of an article *the identity of the individual article must be fixed with certainty.* This is not true in the case at bar, and we hold as we held in the former *Harding* case that the imported merchandise is material for making automobile brake linings and is not parts of automobiles.

Appellants have cited a number of cases by this court, including *United States* v. *Cartier (Inc.)*, 15 Ct. Cust. Appls. 334, T. D. 42493, which involved unfinished jewelry; *Redden & Martin* v. *United States*, 5 Ct. Cust. Appls. 485, T. D. 35147, involving unfinished scissors blades; *United States* v. *Schenkers, Inc.*, 17 C. C. P. A. (Customs) 231, T. D. 43669, which was concerned with unengraved copper rollers, held to be unfinished parts of textile machinery; *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T. D. 33873, involving parts of musical instruments; and *Carr* v. *United States*, 11 Ct. Cust. Appls. 1, T. D. 38633, where automobile springs which were improperly drilled and were further processed or treated in this country were held to be finished parts of automobiles.

We have examined carefully all these decisions and find in none of them anything which supports appellants' contentions here or which is contrary to our views as expressed herein and in the former *Harding* case.

The judgment of the United States Customs Court is *affirmed.*