NEWARK RADIO LABORATORIES *v.* UNITED STATES [1]

---

[1] C. D. 11.

United States Customs Court, Second Division

(Decided July 11, 1938)

Lane & Wallace (*William H. Fox* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Webster J. Oliver*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of so-called incandescent electric-light lamp bases. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at but 25 per centum ad valorem under paragraph 369 (c) of said act as parts of automobiles.

The following are in evidence: As Exhibits 1, 2, and 3, samples of the imported articles; as Illustrative Exhibit A, a glass bulb and a metal filament used in connection with Exhibits 1, 2, and 3 to make an incandescent electric-light lamp; as Illustrative Exhibit B, a sample of an ordinary incandescent electric-light lamp; as Collective Illustrative Exhibits C–1, C–2, C–3, and C–4, four incandescent electric-light lamps used on various parts of an automobile; and as Illustrative Exhibit D, a certified copy of section 15, subdivision 2, of the New York State Vehicular Law.

In addition to said exhibits, the plaintiff offered the testimony of two witnesses. The first, Homer Smith, a partner in the importing firm, identified the samples marked Exhibits 1, 2, and 3, as representative of the importation. He testified that said merchandise was sold by his firm at wholesale to manufacturers of automobile incandescent electric-light lamps; that such lamps differ from other incandescent lamps in shape, amperage, and voltage; that he had never sold articles like Exhibits 1, 2, and 3 to any other class of trade; that in their imported condition they are suitable only for use in manufacturing incandescent electric-light lamps; that the finished lamps made from Exhibits 1, 2, and 3 are used in automobiles for

head lights, tail lights, dash board and panel lights; and that in his experience all of said lights are necessary in order safely and efficiently to operate an automobile at night.

On cross-examination he described the merchandise at bar as automobile lamp bases or bayonet type miniature lamp bases. He testified that they are not used exclusively in automobile lamps, a small percentage being used in the manufacture of other types of lamps; that he had never sold said merchandise for use in anything except as bases for automobile lamps; and that certain lamps manufactured from Exhibits 1, 2, and 3 are used in movie projectors and spot lights

Upon being shown a panel board holding a number of finished lamps, which board is in evidence as defendant's Illustrative Exhibit E, the witness testified that the lamps thereon were manufactured from bases similar to Exhibits 1, 2, and 3, and that the lamps were used for purposes other than on automobiles; that in manufacturing a complete lamp it is necessary to add to Exhibits 1, 2, and 3, a glass bulb with a metal filament inside; that the imported bases are manufactured according to specifications which are standard for this particular type of lamp; and that Exhibits 1, 2, and 3 can be used for lamps which are not automobile lamps.

On redirect examination he testified that the side pin must be a certain distance from the bottom on a standard automobile lamp base, and that the opening must be according to specifications, so that the base will fit correctly into the socket; that the socket referred to is used in automobiles and is made to a standard size; that he has been importing lamp bases like those at bar since the early part of 1936 at the rate of about a million a month, all of which he has sold to manufacturers of automobile lamps.

The second witness called by the plaintiff was Michael Portnow, since 1930 superintendent of a miniature incandescent lamp factory located in Newark, N. J. He testified that said factory manufactures incandescent lamps used exclusively on automobiles; that merchandise like Exhibits 1, 2, and 3 is used in his factory for manufacturing automobile lamps and has been so employed during the past fifteen years; and that said merchandise is not suitable for any other use except in the manufacture of incandescent electric-light lamps.

The witness identified Collective Illustrative Exhibits C–1, C–2, C–3, and C–4 as dash board, parking, head light, and spot light automobile lamps, respectively. He testified that he has driven an automobile for the past twelve years, and that an automobile could not be efficiently driven at night without lights.

On cross-examination he testified that lamps like those he manufactures on bases such as are represented by Exhibits 1, 2, and 3 are used exclusively on automobiles, and that he does not know of any manufacturers who make other kinds of lamps on similar bases.

Upon being shown the panel board containing a number of incandescent lamps (Illustrative Exhibit E), he testified that all of such lamps were made on bases similar to Exhibits 1, 2, and 3; and that although they were used on automobile lamps there were many other incandescent lamps manufactured on bases similar to those here imported.

The Government called as a witness one Alfred L. Maul, an employe in the incandescent lamp department of the General Electric Co. for the past thirty years. He testified that Exhibits 1, 2, and 3 are known as the bayonet type bases, single and double contact; that such bases are used by his company in the manufacture of all kinds of incandescent lamps, including projection lamps, railway signal lamps, switch-board panel lamps, spot lights, indicator lamps, recorder lamps for photocell work, marine lamps, recorder lamps for Western Electric sound system, lamps for sewing machines, vacuum cleaners, motor boats, bicycles, microscope illumination, subway door indicators, portable searchlights, telephone trouble lamps, etc.; and that all of the named types of lamps are made on these standard bases (Exhibits 1, 2, and 3).

On cross-examination he testified that there were no automobile lamps shown on Illustrative Exhibit E; that his company manufactures automobile lamps; and that from 25 to 75 per centum of the lamps manufactured by his company on bases similar to Exhibits 1, 2, and 3 are used on automobiles.

Upon this record we are of the opinion that the Government's contention that the plaintiff has failed to prove the chief use of the imported bases on automobile lamps is well founded. Moreover, even were such fact established, it would not necessarily make these bases parts of automobiles. At best, all that could be said of them is that they were articles used as material in the manufacture of incandescent electric-light lamps. This is a far cry from proving that they are parts of automobiles.

A precisely similar legal question to that here presented arose under the Tariff Act of 1913 in the case of *Buick Motor Co. et al.* v. *United States*, T. D. 38882–G. A. 8468, 40 Treas. Dec. 184. There, certain circular steel disks, classified by the collector under paragraph 119 of said act as finished parts of automobiles, were claimed to be properly dutiable under paragraph 167 of said act as manufactures of metal not specially provided for. It appeared that the disks, after importation, were hammered flat and to their surfaces were riveted asbestos rings. They were then permanently bolted together as a finished part of an automobile known as an automobile clutch. In sustaining the claim of the importers alleged under said paragraph 167, this court (then the Board of General Appraisers), after reviewing the

decision in *Carr* v. *United States*, 11 Ct. Cust. Appls. 1, T. D. 38633, cited by the Government, said:

> It will be observed that the merchandise before the board and the court in that case was a complete automobile spring which, considered as a separate entity, was unquestionably classifiable as a part of an automobile; that as such it was in substantially a finished state as imported, the view of the board and the court being that anything in the nature of further work to be applied thereto was merely of a character intended to fit the spring or adjust it so that it may perform its function as a working part of an automobile. But in the present case, these metal disks can by no stretch of the imagination be considered as parts of an automobile, let alone finished parts. As matter of fact the disks, in their warped and imperfect condition as imported, are scarcely entitled to be considered as very far advanced beyond the stage of mere materials out of which a part of an automobile ultimately may be made, to wit, an automobile clutch. Even after each metal disk has been permanently fastened by rivets to its corresponding asbestos disk, it takes a given number of these combined metal and asbestos disks to make what is known and recognized in trade as an automobile "clutch," just as it takes a certain number of spokes to make an automobile wheel, and a definite number of leaves to make an automobile spring, or certain types and kinds of mechanism and devices to constitute a complete automobile engine. But while the disks, spokes, leaves, or engine parts may properly be considered as parts of automobile clutches, wheels, springs, and engines, respectively, they would hardly be considered as separate entities, for tariff purposes, as being in the same category as the finished article of which either of them is only a part. We certainly can not regard a single metal disk with the same tariff importance as the finished clutch, and such was never the intention of Congress in enacting the provision in paragraph 119 for "finished parts of automobiles." The fact is that the present disks bear precisely the same relation to the finished clutch as would the spring leaves or layers, if imported as separate entities, bear to the automobile springs. Neither the disks nor the spring leaves or layers are parts of an automobile, even though they may, when united with other articles, form some definite thing which would be properly classifiable as a part of an automobile.

And so, in the instant case, the metal bases at bar are not parts of automobiles. They are parts of incandescent lamps which in turn are admittedly made up of several parts of which the metal base is but one. That conclusion is not militated against by the fact that the completed article, to wit, the incandescent lamp, is frequently used in an automobile lamp which may be a part of an automobile. As well claim that the cement used in the manufacture of the incandescent lamp is a part of an automobile as to allege that these metal bases are parts of automobiles.

We therefore hold as a matter of law that the imported metal bases are properly dutiable at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for, as classified by the collector. Hence, all claims of the plaintiff must be, and the same hereby are, overruled, and judgment will be rendered accordingly.