(C. D. 826)

MONTAGUE MACHINE Co. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 19, 1944)

*Brooks & Brooks* (*Frederick W. Brooks, Jr.*, of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: The plaintiff imported certain articles described in the record as "bronze castings, designed for and fit for and used only in machines for making paper pulp or paper." The collector of customs classified the importation under the provision in paragraph 397 of the Tariff Act of 1930 for—

Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, * * *.

Duty was assessed thereon accordingly at the rate of 45 per centum ad valorem. An additional duty of 3 cents per pound was imposed under section 601 (c) (7) of the Revenue Act of 1932 because the articles were composed in chief value of copper. The correctness of the latter assessment is not disputed.

QUILLER

Turbo Runner

By timely protest the plaintiff has challenged the assessment of duty under the Tariff Act of 1930, the claim being that the importation is entitled to the lower rate of 20 per centum ad valorem under paragraph 372 of said act, as modified by the trade agreement between the United States and Sweden, effective August 5, 1935 (T. D. 47785, 68 Treas. Dec. 19). The trade-agreement provision invoked reads—

Machines for making paper pulp or paper, not specially provided for, and parts thereof, not specially provided for, wholly or in chief value of metal or porcelain_____ 20% ad val.

Counsel for the respective parties have stipulated and agreed that said merchandise—

consists of bronze castings, designed for and fit for and used only in machines for making paper pulp or paper, which castings were, at the time of importation, ready for their intended use, except for machine turning the surface marked (1), turning the edges and ends of plates marked (2) and boring and keyseating for mounting on shaft marked (3) as appears from the photograph of the imported article described as a turbo runner on page 5 of the pamphlet attached to stipulation filed in this court January 11, 1943, except that the shaft shown therein was not imported but was produced in the United States, and after the processing described under (1), (2), and (3) above after importation, the said casting becomes the turbo runner which forces the stock through the screen of a pulp screen machine for making paper pulp or paper as shown and described on page 5 and 6 of exhibit 1 herein without which the pulp screen machine could not function as such for making paper pulp or paper.

The pamphlet referred to contains eight pages, and the photograph on page 5 thereof is here reproduced.

Plaintiff contends, on the basis of the above facts, that the articles in controversy are parts of machines for making paper pulp or paper, and, as imported, are ready for use as such parts, requiring only certain surface or fitting operations to be applied thereto which, it is alleged, do not affect the tariff classification of the articles under the trade agreement, *supra*.

The United States, on the other hand, insists that as imported the articles "at best are merely unfinished parts of a machine"; that they "can not be considered as parts of any particular machine"; and that, as matter of law, they are not within the purview of the provision in said trade agreement invoked herein by plaintiff.

In other words, the Government argues that said paragraph 372, as originally written, makes provision for certain machines "in a finished condition"; and for "other machines whether finished or not." This differentiation, it is asserted, is indicative of a congressional purpose to provide only for such unfinished machines and parts thereof as are therein specifically named and so qualified, and that the same interpretation should also be applied to the quoted pro-

vision in said trade agreement. The defendant therefore concludes that the imported articles are not provided for in the trade agreement because they are unfinished, and that unfinished parts as such are not therein contemplated. With this contention we do not agree.

As above noted, it has been stipulated that the involved articles are used only in machines for making paper pulp or paper, and without them the said machines "could not function as such for making paper pulp or paper." Also, the record fully establishes that said articles, in their imported condition, are ready for such use after having had applied thereto certain specified operations.

It may well be that unless and until the parts receive such treatment the condition thereof may be deemed unfinished. However, if the machine turning of the surface, edges, and ends of certain parts be regarded as merely fitting or adjusting operations (which is fairly inferable from the record), it would then follow that the articles in their imported condition are, in contemplation of law, finished parts. *Carr* v. *United States*, 11 Ct. Cust. Appls. 1, T. D. 38633, discussed *infra*.

The boring and keyseating required to mount the article on a shaft would seem to contribute nothing towards completing the article itself, even though that work be necessary to adjust or fit the turbo runner in place in the machine. The noun "key-seat" is defined in Knight's American Mechanical Dictionary, vol. II, page 1226, as—

the groove in a wheel and shaft to receive the key which secures them together,

and in the Standard Dictionary as—

a groove in which a key is driven for the purpose of binding something, as a wheel to its shaft, to prevent turning or sliding.

We are inclined to regard the above specified work as in the nature of fitting or adjusting operations. To illustrate, a door is none the less finished even though it may require certain treatment in order to fit it in place. So, too, a suit of clothes may be regarded as finished notwithstanding certain alterations may be necessary to fit a prospective purchaser. At any rate, we do not feel warranted in finding that these so-called turbo runners are not at least unfinished parts of a particular machine. Indeed, it may, with reason, be asserted that the article in its condition as imported is a finished part of a machine for making paper pulp or paper.

In the *Carr* case, *supra*, a tariff provision for "finished parts of automobiles" was construed in relation to certain automobile springs which the court described as follows:

The springs are inspected after importation, and if the holes in the ends are too large or the bushings are defective, the bushings are removed and replaced by others which are reamed to size. * * *. The springs are lubricated by applying oil or graphite grease to the surface of the leaves exposed to friction. If the springs are to be used by the importer in the immediate building of ma-

chines, they are cleaned with gasoline and given a priming or first coat of paint. When the priming coat is dry, they are again cleaned with gasoline and given a second or final coat which is dried by exposing them to heat in an oven. * * *.

As to the legal effect and significance of such operations, the court said:

The removal and the reaming of the bushings are evidently designed to either fit the springs in place or to correct defects, and therefore can not be regarded as finishing processes in the production of completed springs. * * *.

The lubrication of the springs serves no purpose other than that of diminishing friction and consequently reducing the wear on the leaves. That treatment of the working surfaces of a machine, or any part of it, is not a manufacturing process and is therefore not an agency which, if omitted, would leave the machine or any of its parts unfinished.

Accordingly, the court held that the springs before it were, as imported, covered by the statutory provision for "finished parts of automobiles."

But whether the present importation may be properly regarded as finished parts of machines for making paper pulp or paper, we are satisfied that they are at least unfinished parts of said machines.

In *B. A. McKenzie & Co., Inc.* v. *United States*, 3 Cust. Ct. 72, C. D. 206, certain rough iron castings were held to be properly dutiable under paragraph 372 of the Tariff Act of 1930 as parts of a machine tool, rather than as castings of iron under paragraph 327 of said act. The evidence disclosed, as stated by the court:

that the articles represented by the first twenty-two items on the invoice consisted of cast-iron castings from which a particular machine was to be made; that as imported said castings were in the condition in which they left the foundry, no further work having been applied thereto; that all machine work on said castings was performed after importation; that each piece required the application thereto of some machine work before it was ready to be assembled as a part of the machine; * * *; that after such work was done the different parts were assembled as parts of a machine for grinding saw plates; * * *.

In citing the applicable rule we said:

It is a well-settled principle of customs law that where a material has been so advanced in manufacture as to have reached the stage in which it is clearly incapable of being made into more than one article, then it shall be deemed, even though unfinished, to have been so dedicated to a single use as to fix its status as a part of that article, where the article is in fact such a part. *United States* v. *Schenkers, Inc.*, 17 C. C. P. A. 231, T. D. 43669.

Furthermore, the conceded facts in the present case unquestionably bring the imported articles within the judicial pronouncement as to what constitutes a "part" of a given thing, as declared in *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851. The appellate court there pointed out that—

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.* [Italics quoted.] *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls.

164, T. D. 34249; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673; *Peter J. Schweitzer, Inc.* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, and cases cited therein; *United States* v. *John Wanamaker*, 16 Ct. Cust. Appls. 548, T. D. 43266.

Here, the interested parties agree that after certain specified preliminary operations have been applied to the imported merchandise, it "becomes the turbo runner which forces the stock through the screen of a pulp screen machine for making paper pulp or paper * * * without which the pulp screen machine could not function as such for making paper pulp or paper." The established facts, therefore, make here applicable the rule judicially enunciated in the *Willoughby* case, *supra*.

While Government counsel concedes in his brief that these so-called turbo runners "at best are merely unfinished parts of a machine," nevertheless he denies that they are covered by said paragraph 372, as modified by the trade agreement, *supra*. He thus expresses his view of the law in the premises:

We further contend that since paragraph 372 of the Tariff Act of 1930 specifically provides for some machines when finished and other machines whether finished or not, it was the intent of Congress not to include unfinished parts of any machines within the paragraph because the provision for parts does not contemplate unfinished parts.

He also asserts that—

In the modification of this paragraph, by the trade agreement with Sweden, machines for making paper pulp or paper are provided for at a reduced rate of duty. These are in the same category as the machines provided for in the paragraph, which are complete in themselves; that is, there are no words such as finished or unfinished, contained in the trade agreement. Likewise, the parts of these machines provided for in the trade agreement, are not unfinished parts, but must be parts ready for use as imported into the United States.

If machines for making paper pulp or paper were imported prior to August 5, 1935—the effective date of said trade agreement—it can hardly be doubted that duty would have been imposed thereon at the rate of 27½ per centum ad valorem under the provision in said paragraph 372, reading:

all other machines, *finished or unfinished*, not specially provided for, 27½ per centum ad valorem: *Provided*, That parts not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: * * *. [Italics ours except the word "Provided."]

Out of said general provision has been carved the special classification found under the same numbered paragraph in the trade agreement with Sweden, *supra*, reading:

Machines for making paper pulp or paper, not specially provided for, and parts thereof, not specially provided for, wholly or in chief value of metal or porcelain_____20% ad val.

The contention of Government counsel is that the language of said special provision limits the scope thereof to *finished* paper pulp or

paper-making machines and *finished* parts thereof, and excludes therefrom the same machines and parts if *unfinished.* In other words, if the machines or parts are unfinished they must pay 27½ per centum ad valorem, on the theory that they are not covered by the trade agreement. We are loath to believe that it was the intention of the negotiators of the trade agreement that a higher rate of duty should be imposed on *unfinished*, than on *finished*, paper pulp or paper-making machines and parts thereof.

A somewhat similar issue of law was before the court in *Waltham Watch Co.* v. *United States*, (Jaeger Watch Co., Inc., Party in Interest) 25 C. C. P. A. (Customs) 330, T. D. 49425, wherein concededly unfinished pillar or bottom plates for watch movements were held classifiable as pillar or bottom plates. Referring to the imported condition of the articles the court stated:

The witness for the party in interest mentioned twenty-two separate and distinct steps involved in work done upon the article imported, after importation, which comprise counter-boring with high-speed drilling machines, but admitted that some of such work was involved in operations other than in finishing the plate. He stated, however, that after four counter-boring operations had been completed, nine or ten drilling operations were performed, which obviously meant that there were nine or ten different holes to be drilled, a part of which hole drilling consisted in counter-boring certain holes made in certain previous operations, but that all the work necessary to make a completed pillar plate might be performed by two classes of operations, one drilling and the other recessing.

In stating the sole question before it the court said:

\* \* \*: Are *unfinished* pillar or bottom plates dutiable under the above-quoted *eo nomine* provision for "pillar or bottom plates or their equivalent" in said paragraph 367. [Italics quoted.]

It appears that paragraph 367 contained at least one other provision in which appeared the words "finished or unfinished." Commenting thereon the court observed:

To state here definitely what Congress meant by the inclusion of the term "finished or unfinished" in subparagraph (f) or why it was omitted from the other provisions of the paragraph would be mere speculation. But, we are sure that the fact alone that it was included in subparagraph (f) and omitted elsewhere in the numerous provisions of the paragraph, is not persuasive that Congress intended only completed articles to be dutiable under subparagraph (c) (2). So to hold, in our judgment, would not only do violence to the paragraph as a whole but to many other provisions of the tariff act. All that would be necessary to do to avoid classification under paragraph 367, except for the articles provided in subparagraph (f), would be to omit some part or to fail to completely finish the same.

To illustrate its reasoning the court happened to select paragraph 372, the one here under consideration, concerning which it made these observations:

Let us suppose that some of the machines specifically named in paragraph 372 were to be imported with some small but essential part omitted. There is no specific provision in the first part of the paragraph for the machines in their unfinished state. There is, however, a provision for "all other similar textile ma-

chinery, finished or unfinished," and for "all other textile machinery, finished or unfinished," and there is also a provision further along in the paragraph for "all other machines, finished or unfinished." We can see no difference in principle in the contentions of the party in interest here from a contention that paragraph 372, by reason of the facts above pointed out, must be similarly construed so as to require that sewing machines, steam turbines, cash registers, lawn mowers, and many other machines specifically named would have to be, in the condition imported, suitable for use without being altered or without any further additions being made thereto.

The court added:

Many of the paragraphs of the tariff act can be pointed to where the term "finished or unfinished" or its equivalent is omitted and where a holding such as is contended for here by the party in interest would be calculated to completely destroy the provisions. As is suggested by the decisions relied upon by appellant, it is not conceivable that Congress could have anticipated such a result. It would not only permit an avoidance of the intended purposes of the dutiable classification provisions, but would require a holding, under some circumstances, that would invade the free-list provisions. For instance, typewriters could not enter free unless they were complete articles, and the free entry of master records and sound records would also be affected. What effect such a holding would have on the free-list provisions and the dutiable provisions for works of art would be difficult at this time to foresee.

Applying the same reasoning here, we hold that there is no merit in the Government's contention that only completed machines and finished parts thereof are contemplated by the provision in the Swedish Trade Agreement, *supra*, for "Machines for making paper pulp or paper, * * * and parts thereof."

We regard our decision in *J. M. Lehmann Co., Inc.* v. *United States*, 70 Treas. Dec. 188, T. D. 48474, relied upon by the Government, as here readily distinguishable. Concerning the copper and bronze castings there involved we pointed out that—

the plaintiff has failed to prove that any of the imported articles is an integral and indispensable part of any machine without which the machine could not function as such for the purposes for which it was designed. Therefore, having failed to sustain the burden of overcoming the presumptive correctness of the collector's classification, all claims of the plaintiff must be and they hereby are overruled and the decision of the collector in each instance is affirmed. * * *.

In the present case the evidence definitely establishes that the imported articles are integral and indispensable parts of machines for making paper pulp or paper, without which the machines could not function as such for the purposes for which they were intended.

Hence, upon the established facts and the law applicable thereto we hold that the so-called turbo runners are parts of machines for making paper pulp or paper, not specially provided for, composed wholly of metal, and as such are dutiable at the rate of 20 per centum ad valorem under the provision therefor incorporated in said paragraph 372 by virtue of the Swedish Trade Agreement, *supra*, as alleged by the plaintiff. That claim is therefore sustained; all others are overruled.

Judgment will be entered accordingly.