(C. D. 1620)

Geo. S. Bush & Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided June 3, 1954)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Mollie Strum, Richard H. Welsh*, and *Samuel D. Spector*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: Magnesium castings in the form of unfinished clutch housings, magneto housings, and fan housings constitute the subject matter of the instant controversy. This merchandise was classified by the collector of customs at the port of Seattle, Wash., as articles, wares, or manufactures of magnesium, not specially provided for, and assessed with duty at the rate of 20 cents per pound on the metallic magnesium content, plus 10 per centum ad valorem, pursuant to the provisions of paragraph 375 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. It is the claim of the plaintiff that these articles are more specifically provided for in paragraph 372 of said act, as modified by said trade agreement, as parts of machines, not specially provided for, and, hence, that they are properly dutiable at the rate of 15 per centum ad valorem.

The following provisions of the Tariff Act of 1930, as modified, *supra*, are here involved:

Paragraph 372:

Machines, finished or unfinished, not specially provided for:

\*　　\*　　\*　　\*　　\*　　\*　　\*

    Other　\*　\*　\*　_____ 15% ad val.

Parts, not specially provided for, wholly or in chief value of
metal or porcelain, of articles provided for in any item 372
of this Part:

\*　　\*　　\*　　\*　　\*　　\*　　\*

    Other_____ The same rate of
duty as the ar-
ticles of which
they are parts.

Paragraph 375:

Magnesium alloys, powder, sheets, ribbons, tubing, wire, and
all other articles, wares, or manufactures of magnesium, not
specially provided for_____ 20¢ per lb. on the
metallic magnesi-
um content and
10% ad val.

There is no substantial factual dispute in this action. The record
consists of a stipulation of the parties to the effect that the involved
articles are in chief value of magnesium, but are neither machines nor
finished parts of machines; the testimony of two witnesses called by
the plaintiff; and several physical and documentary exhibits. The
latter illustrate the merchandise in its condition, as imported (plaintiff's
exhibit 2, casting for clutch housing; plaintiff's exhibit 3,
casting for magneto housing; plaintiff's exhibit 4, casting for
fan housing); in its condition, after processing in this country (plain-
tiff's exhibit 2–A, finished clutch housing; plaintiff's exhibit 3–A,
finished magneto housing; plaintiff's exhibit 4–A, finished fan housing);
and the ultimate article, to wit, a power saw, which incorporates the
finished housings (plaintiff's exhibit 1, photograph of a power saw;
plaintiff's illustrative exhibit 5, catalog containing drawings of power
saw assemblies).

It appears that the involved housings are sand-cast in Canada in
accordance with designs and specifications prepared by Titan Chain
Saws, Inc., the American manufacturer of the power saws, and the
real importer of the instant merchandise. After the castings are made,
they are subjected to certain further processing by the Canadian
foundry. This includes "knocking-out" the cores from the recesses
of the castings, removal of excess pieces of magnesium, described as
gates, burrs, and flash, by sawing and grinding; further grinding and
smoothing certain areas, which must be true and held within definite
tolerances. In addition, some of the castings undergo special proc-
essing, such as heat treatment to increase their tensile strength;
pickling to halt magnesium flux; cleaning, handtooling, and milling.

As imported, the castings are completely accurate and true at so-called locating surfaces.

After importation, the castings are primed, painted, machined, drilled, tapped, and cover-painted. Owing to a larger quantity operation, the amount of time spent in this country in finishing the castings equals the time expended on them by the Canadian foundry. When finished, the three housings in question can be assembled so that they fit together neatly and precisely. This is not true of the articles in their imported condition. The finished castings have no use other than in the particular power saw, which is depicted in plaintiff's exhibit 1.

It further appears that in the operation of a power saw, such as plaintiff's exhibit 1, the internal-combustion engine drives a chain containing cutting teeth around the perimeter of a saw blade. As the device is pressed against a tree or other wood object, it cuts through the wood in the manner that a drawing, crosscut, buck, or other type of saw would operate. In respect to the power which it utilizes, the method of application of that power, and the work which it performs, plaintiff's exhibit 1 is similar to the power saws which were the subject of decision in the case of *Geo. S. Bush & Co., Inc.* v. *United States*, 41 C. C. P. A. (Customs) 33, C. A. D. 525.

We are of opinion that factually it has been here established that the involved castings, although unfinished in their imported condition, are, nevertheless, dedicated for use, when completed, as parts of machines.

The issue as posed by these established facts, and the respective contentions of the parties, is whether an unfinished part of a machine, which has been so far processed as to be useful only in the machine for which it has been designed, is, in contemplation of law, a part of a machine. This query presents itself for the reason that neither paragraph 372, as originally enacted, nor paragraph 372, as modified by the General Agreement on Tariffs and Trade, *supra*, makes express provision for unfinished parts of machines.

Plaintiff, of course, urges that this question ought to be answered in the affirmative and quotes, as controlling, the following rule of law from *United States* v. *Schenkers, Inc.*, 17 C. C. P. A. (Customs) 231, T. D. 43669:

> The principle applied in those two cases was that where a material has been so advanced in manufacture as to have reached a stage in which it is clearly incapable of being made into more than one article, then it shall be deemed, even though unfinished, to have been so dedicated to a single use as to fix its status as a part of that article.

Counsel for the defendant relies solely upon the case of *United States* v. *The J. D. Richardson Company*, 36 C. C. P. A. (Customs) 15, C. A. D. 390, to support his contention that because the involved

articles are unfinished, they are not within the purview of paragraph 372, as modified, *supra*.

Substantially the same issue as the one before us has twice previously been considered by this court, and in each instance resolved favorably to the plaintiff.

The case of *Montague Machine Co.* v. *United States*, 12 Cust. Ct. 30, C. D. 826, involved certain bronze castings, designed for, fit and used only in, machines for making pulp and paper. These castings, which were classified as manufactures of metal under paragraph 397 of the Tariff Act of 1930, were claimed to be provided for in paragraph 372 of said act, as modified by the trade agreement between the United States and Sweden, 68 Treas. Dec. 19, T. D. 47785, as parts of machines for making paper pulp or paper. The Government there argued that since paragraph 372, as originally enacted, made provision for certain machines, whether or not finished, and for certain other machines, without qualification, it was the intention of Congress to exclude from the scope of the paragraph all unfinished machines, not specially provided for, in such condition. This same interpretation, it was urged, should apply to the trade agreement provision. In denying validity to this contention, this court stated:

> But whether the present importation may be properly regarded as finished parts of machines for making paper pulp or paper, we are satisfied that they are at least unfinished parts of said machines.
>
> \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*
>
> The contention of Government counsel is that the language of said special provision limits the scope thereof to *finished* paper pulp or paper-making machines and *finished* parts thereof, and excludes therefrom the same machines and parts if *unfinished*. In other words, if the machines or parts are unfinished they must pay 27½ per centum ad valorem, on the theory that they are not covered by the trade agreement. We are loath to believe that it was the intention of the negotiators of the trade agreement that a higher rate of duty should be imposed on *unfinished*, than on *finished*, paper pulp or paper-making machines and parts thereof. [Italics quoted.]

Again, in *Oxford University Press, N. Y., Inc.* v. *United States*, 20 Cust. Ct. 78, C. D. 1088, the question of the proper classification of unfinished parts of machinery was considered. The subject matter of that case consisted of unfinished parts of printing machinery, to wit, incomplete electrotype plates, which were held to fall within the provision of paragraph 372 for parts of machines, despite their unfinished condition. Noting particularly that the present paragraph 372 contains no provision for unfinished parts, which was not true of the predecessor paragraph in the act of 1922, this court was of opinion that no special significance should be attached to the change in language effected by the omission of the qualifying words "finished or unfinished" in paragraph 372 of the Tariff Act of 1930. In reaching that conclusion, the anomaly of imposing a higher rate

of duty upon an unfinished part than would apply to a part complete and ready for use was happily avoided.

The two foregoing cases rested heavily upon the decision of our appellate court in *Waltham Watch Co.* v. *United States*, 25 C. C. P. A. (Customs) 330, T. D. 49425, for a sustaining principle. That case involved the question of whether unfinished pillar or bottom plates for watch movements were covered by the provision in paragraph 367 (c) (2) of the Tariff Act of 1930, for pillar or bottom plates. Despite a specific enumeration elsewhere in that paragraph of the phrase "finished or unfinished," as applied to cases, containers, and housings, and the absence of any such modifier in connection with pillar plates, the court, nevertheless, determined that the unfinished articles were covered by the provision. Upon this phase of the case, the court observed:

To state here definitely what Congress meant by the inclusion of the term "finished or unfinished" in subparagraph (f) or why it was omitted from the other provisions of the paragraph would be mere speculation. But, we are sure that the fact alone that it was included in subparagraph (f) and omitted elsewhere in the numerous provisions of the paragraph, is not persuasive that Congress intended only completed articles to be dutiable under subparagraph (c) (2). So to hold, in our judgment, would not only do violence to the paragraph as a whole but to many other provisions of the tariff act. All that would be necessary to do to avoid classification under paragraph 367, except for the articles provided in subparagraph (f), would be to omit some part or to fail to completely finish the same.

Let us suppose that some of the machines specifically named in paragraph 372 were to be imported with some small but essential part omitted. There is no specific provision in the first part of the paragraph for the machines in their unfinished state. There is, however, a provision for "all other similar textile machinery, finished or unfinished," and for "all other textile machinery, finished or unfinished," and there is also a provision further along in the paragraph for "all other machines, finished or unfinished." We can see no difference in principle in the contentions of the party in interest here from a contention that paragraph 372, by reason of the facts above pointed out, must be similarly construed so as to require that sewing machines, steam turbines, cash registers, lawn mowers, and many other machines specifically named would have to be, in the condition imported, suitable for use without being altered or without any further additions being made thereto.

Many of the paragraphs of the tariff act can be pointed to where the term "finished or unfinished" or its equivalent is omitted and where a holding such as is contended for here by the party in interest would be calculated to completely destroy the provisions. As is suggested by the decisions relied upon by appellant, it is not conceivable that Congress could have anticipated such a result. * * *

Running through these cases is a reiteration of the rule heretofore recited that where an article has been so far advanced in manufacture as to be dedicated to a specific use, and to have no other use or ultimate intendment, it is to be regarded, for tariff purposes, as the article it is intended to be when completed. Particularly is this so in the case of articles which, in their finished condition, are destined for use as parts.

We do not doubt the soundness of this principle of law. Moreover, its application to the issue we are here called upon to decide would seem to be dictated by the decisions we have just reviewed. Nevertheless, we find the following contrary expression in the case of *United States* v. *The J. D. Richardson Company, supra*:

* * * We are of opinion, however, that it was not intended by the word "alterations," contained in paragraph 1615 (g), *supra*, to permit articles, such as in the instant case, to be exported in an unfinished condition which could not have been classified as parts of machines, and so manufactured abroad that upon their return would be properly dutiable as parts of machines. Had the "unflanged" articles, exported to Canada, been imported into the United States in an "unflanged" condition, in view of the record in this case, they certainly could not have been classified as parts of machines under paragraph 372, *supra*.

* * * * * * *

It may be observed, furthermore, that paragraph 372, *supra*, provides "* * * That parts, not specially provided for, wholly or in chief value of metal * * * shall be dutiable at the same rate of duty as the articles of which they are parts, * * *" and it also provides for "* * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: * * *" So far as the issues here are concerned, that paragraph differs from paragraph 372 of the Tariff Act of 1922 which provided for "* * * all other machines *or parts thereof, finished or unfinished,* not specially provided for, 30 per centum ad valorem: * * *" [Italics ours.] It is apparent, therefore, that although paragraph 372 of the Tariff Act of 1922 provided for parts, finished or unfinished, of all other machines not specially provided for, paragraph 372 of the Tariff Act of 1930 does not provide for parts of machines in an unfinished condition. The change in the two paragraphs obviously discloses a congressional intent to limit the provision for parts of machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930, to those that are in a finished condition.

In the *Richardson* case, the court was called upon to consider whether certain so-called flanging operations performed in Canada upon metal "bands" or "rims" manufactured in the United States were "alterations" within the contemplation of paragraph 1615 (g) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. Upon the return of the flanged rims to the United States, they were classified as parts of machines under paragraph 372, *supra*, and the ad valorem rate of duty provided for therein was assessed upon the full value of the rims. The importer contended that the operations in Canada were alterations within the purview of said paragraph 1615 (g) and, hence, that duty should have been assessed only upon the value of the Canadian processing. The propriety of primary classification within paragraph 372 was never in issue.

We have carefully examined the briefs submitted upon appeal and have not been able to find other reference to the provisions of paragraph 372 than that the collector had invoked said paragraph for the classification of the merchandise. We venture the opinion that the question of the meaning of the term "alterations," as applied to a manufacturing process, did not depend for its solution upon a construc-

tion of the scope of the parts provision in paragraph 372, and that, therefore, the court's observations in respect thereto were in the nature of *dicta*. We are loath to believe that without the presentation of a real issue, nor an adequate briefing of the proposition by counsel, our appellate court would have discarded a principle so firmly espoused in prior adjudications.

This view seems to be borne out by the fact that in the case of *United States* v. *The Singer Manufacturing Company*, 37 C. C. P. A. (Customs) 104, C. A. D. 427, decided about a year after the *Richardson* case, our appellate court determined the dutiable status of certain rough unmachined castings without reference to that decision. The competition in the *Singer* case was between paragraph 372, where the merchandise had been classified, and paragraph 327, the iron castings provision, which was claimed to be applicable. The following quoted portions of the court's opinion in the *Singer* case bear eloquent indication of the materiality of such a reference:

> The undisputed testimony is that the imported merchandise consists of rough, unmachined castings of iron with nothing done to them after the foundry work except the tumbling, grinding, and sandblasting, which simply consists of taking the sand off the castings and removing any burrs or projections; that none of the castings have been machined, drilled, or otherwise advanced in condition or in value before importation; and that none of the castings in their imported condition could be used as a part of a power transmitter or power table which was their intended use in their finished condition; also, that none of the castings could be used in their imported condition for any commercial use as a made-up article or as a part of a made-up article, or as finished machine parts; and that the castings were of such form and shape that their only use was to be made into parts for a power transmitter or power table after essential additional work was done including milling, drilling, facing, tapping, boring, reaming, counter-boring, japanning, grooving, grinding, and assembling.

> \*      \*      \*      \*      \*      \*

> The Government contends that the involved castings are articles or parts of articles, and therefore excluded from paragraph 327, *supra*, by virtue of the words "but not made up into articles, or parts thereof"; that "where a material has been advanced in manufacture so as to have reached a stage in which it is clearly incapable of being made into more than one article, then it should be held, even though unfinished, to have been so dedicated to a single use as to fix its status as a part of that article"; that paragraph 327, *supra*, was intended to embrace castings which had not been fabricated to such a point that they were dedicated to a particular use at the time they left the foundry and that the imported castings are properly dutiable as parts of machine, not specially provided for, under paragraph 372, *supra*.

> \*      \*      \*      \*      \*      \*      \*

> As above stated, the involved castings are not "finished machine parts" and paragraph 327, *supra*, excludes machine parts from its provisions only if they are "finished machine parts." The provisions of paragraph 372, *supra*, include "parts" of machines, "not specially provided for." The question then is "are the castings specially provided for in some paragraph other than 372?" We think they are specially provided for in paragraph 327, *supra*. They are castings

of iron; they have not been advanced in condition subsequent to the casting process so as to be made up into articles, or parts thereof, or into finished parts. * * *

Obviously if paragraph 372, *supra*, excludes parts which are not in a finished condition, the court's posing of the question of whether the castings were specially provided for in some other paragraph would have been pointless. The only possible intendment of the query is that without some more specific provision, paragraph 372 was properly invoked by the collector.

We note also that the Government's contentions, as above quoted, which coincide with the position taken by plaintiff, in the case before us, are apparently now being repudiated.

If within the confines of a single tariff paragraph the statutory use of the phrase "finished or unfinished" does not operate to prevent classification of articles which may be incomplete within other provisions thereof which do not carry those qualifying words, as in the *Waltham Watch Co.* case, we believe that Congress did not intend otherwise when it changed the language of the 1922 act in respect to parts of machines.

In the rearrangement of the various items of the Tariff Act of 1930; in the deletion of the several enumerations of parts of specifically named machines and the substitution therefor of a comprehensive parts provision, we discern a congressional purpose to enlarge, rather than to diminish, the scope and operation of the present paragraph 372. To hold that unfinished parts are not classifiable thereunder would defeat that purpose.

Moreover, we regard as extremely unlikely that Congress, having provided in paragraph 372 for "all other machines, finished or unfinished, not specially provided for," could have intended to limit the provision for parts to finished parts. If unfinished machines find classification in paragraph 372, why not unfinished parts of machines? To say that only finished parts of unfinished machines are covered by the paragraph is to negate the very language which Congress has adopted. The phrase "unfinished machines" may be employed to describe not only machines lacking in some essential parts, but as well machines whose parts are not yet complete. It is not to be supposed that Congress contemplated the one meaning and not the other.

In view of the foregoing considerations, we hold that the merchandise at bar is dutiable at the rate of 15 per centum ad valorem as parts of machines, finished or unfinished, not specially provided for, within the purview of paragraph 372, as modified, *supra*. The claim in the protest to that effect is sustained.

Judgment will be entered accordingly.