**J. E. BERNARD & CO., Inc.**
v.
**UNITED STATES.**
**C.D. 3834, Protest Nos. 65/15728–14628.**

United States Customs Court,
Second Division.
May 29, 1969.

Schwartz & Lidstrom, Chicago, Ill. (Barnes, Richardson & Colburn, New York City, Earl R. Lidstrom and Joseph Schwartz, Chicago, Ill., of counsel) for the plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Mollie Strum and Alfred A. Taylor, Jr., New York City, trial attys.), for the defendant.

Before RAO, FORD and ROSEN-STEIN, Judges:

ROSENSTEIN, Judge:

This case involves the proper tariff classification of certain cutting forms classified as manufactures of metal, not specially provided for, under paragraph 397, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, and assessed with duty thereunder at the rate of 19 per centum ad valorem.

Plaintiff claims by amendment to the protest, that the merchandise is properly dutiable as parts of machines, not specially provided for, under paragraph 372 of said Act, as modified by the 1960–61 Tariff Conference Agreement, T.D. 55615, at the rate of 10½ per centum ad valorem or, alternatively, as parts of articles having as an essential feature an electrical element or device under paragraph 353 of said Act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, at the rate of 13¾ per centum ad valorem.

The competing tariff provisions are as follows:

Paragraph 397, as modified, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*　\*　\*　\*　\*　\*　\*　\*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*　\*　\*　\*　\*　\*　\*　\*

Not wholly or in chief value of tin or tin plate:

\*　\*　\*　\*　\*　\*　\*　\*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum \* \* \* .......19% ad val.

Paragraph 372, as modified, *supra:*

Machines, finished or unfinished, not specially provided for:

\*　\*　\*　\*　\*　\*　\*　\*

Other (except \* \* \*) ....................10½% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 of this Schedule. — The rate for the article of which they are parts.

Paragraph 353, as modified, *supra:*

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \* \* \*

Other (except \* \* \*) ....................13¾% ad val.

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof) .... — The same rate of duty as the articles of which they are parts

———◆———

The sole witness, Edward Davies, who runs the plant of Duro Art Supply Company, the firm for whose account the merchandise at bar was imported, testified that his company deals in art supplies in addition to die cutting of letters and tracing letters.

A steel rule die cutting form, consisting of raised metal letters and numbers partially inserted in a wooden block, was received in evidence as illustrative of the merchandise in its imported condition. The articles were stipulated to be in chief value of metal.

Mr. Davies testified that rubber is inserted in the spaces surrounding the letters, and that the cutting form, or die, as it is called, is placed in the center of a chase, which is a metal frame used on a platen die cutting press. The space between the die and the edge of the chase is filled with wood; the die is locked into the chase which is then put into the die cutting press. When the press is opened the paper which has been die-cut is ejected from the die by the rubber which was compressed between the die and the platen.

The cutting form is used with a Krause die cutting press, which is the machine owned by his company, as well as with the Thompson, Chandler & Price, and Bobst die cutting presses, which are operated electrically. All but the Bobst machine, which is automatic, are hand-fed presses.

The imported dies are used to cut paper and cardboard to make articles such as lettering guides, an illustrative sample of which was received in evidence. Mr. Davies stated that a die cutting press needs a steel rule die, and that the press "is no good without the die". When asked if the cutting forms have any use other than with die cutting presses he stated, "I don't believe so. I don't know. I know of no other use." (R.20.) He has seen the die cutting presses used to cut holes in coin cards and to cut miniature license plates.

Plaintiff contends that the die cutting forms are parts of die cutting presses; that the presses are machines classifiable under paragraph 372; and that the cutting forms are therefore classifiable as parts of machines under said paragraph. Plaintiff suggests, alternatively, that if this court should find that the die cutting presses are powered by electricity and classifiable under

paragraph 353 as articles having as an essential feature an electrical element or device, the forms would be classifiable under the latter paragraph as parts of said articles.

In order to establish that an importation is a part, it must be shown that, in its imported condition, it is dedicated for use exclusively with the article of which it is claimed to be a part, and that it serves a necessary or important, or useful purpose in the functioning of that article. Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849 (1964); Gallagher & Ascher Company v. United States, 62 Cust.Ct. ——, C.D. 3695, 295 F.Supp. 316 (1969); Close and Stewart v. United States, 58 Cust.Ct. 350, C.D. 2985, 268 F.Supp. 466 (1967); Bushnell International, Inc. v. United States, 49 Cust.Ct. 123, C.D. 2370 (1962).

The resolution of the issue herein turns on whether plaintiff has satisfactorily shown that the imported dies are dedicated solely and specifically to use with die cutting presses and are adaptable to no other use.

The government contends that plaintiff has failed to give evidence of such dedication, and argues further that, as the dies cannot be used with a die cutting press in their condition as imported but first require rubber to be affixed thereto, they cannot be parts of such machines in a tariff sense; they have not been advanced to where they are dedicated to the use described by the witness.

Although we agree that plaintiff has failed to discharge its burden of proof herein, we shall first address ourselves to defendant's second argument as it reveals a basic misconception of the requirements for classification of articles as "parts".

In United States v. American Bead Co. et al., 9 Ct.Cust.App. 27, 29, T.D. 37873 (1918), a leading case on identification of an article as a part, our appellate court stated that—

An article not an actual constituent of a manufacture can not be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it cannot be regarded as a part of any specified manufacture.

In United States v. Schenkers, Inc., 17 CCPA 231, 233, T.D. 43669 (1929), our court of appeals cited United States v. Lyon & Healy, 4 Ct.Cust.App. 438, T.D. 33873 (1913), involving, among other items, unpolished and unfitted wood pieces cut to shape for use in making violin or cello necks, and United States v. Riga, 1 Cir., 171 F. 783 (1909), involving unfinished rough-bored barrels for rifles, commenting:

The principle applied in those two cases was that where a material has been so advanced in manufacture as to have reached a stage in which it is clearly incapable of being made into more than one article, then it shall be deemed, even though unfinished, to have been so dedicated to a single use as to fix its status as a part of that article. * * *

In Geo. S. Bush & Co., Inc. v. United States, 32 Cust.Ct. 316, 321, C.D. 1620 (1954), involving unfinished magnesium castings, this court, after citing cases on the classification of unfinished articles, stated—

Running through these cases is a reiteration of the rule heretofore recited that where an article has been so far advanced in manufacture as to be dedicated to a specific use, and to have no other use or ultimate intendment, it is to be regarded, for tariff purposes, as the article it is intended to be when

completed. Particularly is this so in the case of articles which, in their finished condition, are destined for use as parts.

See also United States v. Kriss Kross Corp., 24 CCPA 133, T.D. 48607 (1936); Harding Co. et al. v. United States, 23 CCPA 250, T.D. 48109 (1936); Harrigan Auto Parts Co. v. United States, 46 Cust.Ct. 168, C.D. 2252 (1961); Lodge Spark Plug Co., Inc., and James Loudon et al. v. United States, 44 Cust.Ct. 448, Abs. 64136 (1960).

It is patent, under the principle enunciated in the *American Bead, Schenkers,* and other cases cited hereinabove, that the government's position that the cutting forms are not classifiable as parts because they are not immediately ready for use with a die cutting press has little merit if, in fact, the articles, albeit incomplete or unfinished, possess those distinguishing characteristics which identify them with respect to their intended ultimate use, and they are shown to have only that one particular use. As the court stated in Davis Turner & Co. v. United States, 13 Cust.Ct. 190, 198, 199, C.D. 893 (1944)—

> It has almost consistently been held that a part must have been manufactured and dedicated solely for use on a particular article *and to be useful for no other purpose.* [citing cases] To be dutiable as a "part" of an article, the item claimed to be such must be clearly identified with such article. [Emphasis copied.]

We are cognizant of a variant expression in United States v. J. D. Richardson Company, 36 CCPA 15, 18, C.A.D. 390 (1948), cert. den. 336 U.S. 936, 69 S.Ct. 746, 93 L.Ed. 1095 (1949), wherein the appellate court observed that—

\* \* \* although paragraph 372 of the Tariff Act of 1922 provided for parts, finished or unfinished, of all other machines not specially provided for, paragraph 372 of the Tariff Act of 1930 does not provide for parts of machines in an unfinished condition. The change in the two paragraphs obviously discloses a congressional intent to limit the provision for parts of machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930, to those that are in a finished condition.

The court, however, apparently reconsidered its position as, not long thereafter, in United States v. Singer Manufacturing Company, 37 CCPA 104, C.A.D. 427 (1950), it indicated that *unfinished* iron castings were classifiable as parts of machines, not specifically provided for, under paragraph 372 of the Tariff Act of 1930, unless specially provided for elsewhere.[1]

In Geo. S. Bush & Co., Inc. v. United States, *supra,* this court noted that the aforesaid statement in *Richardson,* which repudiated an established sound principle of law, was on a point of law not raised, argued or briefed by either party (the question before the court was whether certain flanging operations performed upon metal bands in Canada constituted "alterations" within the purview of paragraph 1615(g), Tariff Act of 1930, as amended), and, therefore, was in the nature of *dictum.*

Furthermore, we found no evidence of congressional intent to exclude unfinished parts from paragraph 372, stating (32 Cust.Ct. at page 324):

> In the rearrangement of the various items of the Tariff Act of 1930; in the deletion of the several enumerations of

1. The court stated, at page 108:
   \* \* \* Should they be considered for tariff purposes as parts of machines, not specially provided for, or as castings of iron which have been "advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof"?

   As above stated, the involved castings are not "finished machine parts" and

paragraph 327, *supra,* excludes machine parts from its provisions only if they are "finished machine parts." The provisions of paragraph 372, *supra,* include "parts" of machines, "not specially provided for." *The question then is "are the castings specially provided for in some paragraph other than 372?"* We think they are specially provided for in paragraph 327, supra. \* \* \* [Emphasis added.]

parts of specifically named machines and the substitution therefor of a comprehensive parts provision, we discern a congressional purpose to enlarge, rather than to diminish, the scope and operation of the present paragraph 372. To hold that unfinished parts are not classifiable thereunder would defeat that purpose.

Moreover, we regard as extremely unlikely that Congress, having provided in paragraph 372 for "all other machines, finished or unfinished, not specially provided for," could have intended to limit the provision for parts to finished parts. If unfinished machines find classification in paragraph 372, why not unfinished parts of machines? To say that only finished parts of unfinished machines are covered by the paragraph is to negate the very language which Congress has adopted. The phrase "unfinished machines" may be employed to describe not only machines lacking in some essential parts, but as well machines whose parts are not yet complete. It is not to be supposed that Congress contemplated the one meaning and not the other.

And see J. E. Bernard & Co., Inc. v. United States, 49 Cust.Ct. 332, Abs. 67287 (1962).

We do not think that our appellate court intended to adopt the dubious construction of paragraph 372 expressed in *Richardson, supra*, or to discard a settled principle that it reiterated, with approval, only recently in Ford Motor Company v. United States, 56 CCPA ——, C.A.D. 946 (1968).

■ Turning to the articles at bar, which have been identified as steel die cutting forms, the record establishes that,

when used with a die cutting press, they are essential components of such press. What plaintiff has failed to prove, however, is that they are manufactured for and dedicated exclusively to that use. The fact that the witness Davies knows of no other use for the forms (which seems quite likely as his experience is limited solely to die cutting presses and the materials handled by his company) is a far cry from establishing that they are not used with other equipment. For all we know, these forms may be suited for, and used with, other articles such as printing machinery (which is specially provided for in paragraph 372). It has not been shown that they are so designed as to be suitable for use only with a die cutting press.

While it has often been said that samples are potent witnesses, it is not apparent from an examination of the illustrative sample in evidence that the imported forms are unquestionably used only with die cutting presses. The use of articles such as those at bar is not a fact of such notoriety that we may take judicial notice of it. New York Merchandise Co., Inc. v. United States, 44 Cust.Ct. 144, C.D. 2169 (1960).

For the foregoing reasons, we find that plaintiff has failed to show exclusivity of the claimed use for the imported merchandise and to overcome the presumptively correct finding of the collector that the forms are not parts of die cutting presses. It is therefore unnecessary to consider the applicability of either paragraph 353 or paragraph 372.

The protest is overruled. Judgment will be entered accordingly.

RAO, C. J. and FORD, J., concur.